UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WESLEY BERG,                                              Docket No:

       *Plaintiff,*                                     **COMPLAINT**

  -against-                                                 **PLAINTIFF HEREBY
                                                           DEMANDS A JURY TRIAL**
RONDINDONE STUDIO LLC, and
UGO RONDINONE, Individually,

       *Defendants.*
-----------------------------------------------------------X

    Plaintiff, Wesley Berg, as and for his Complaint, respectfully alleges, all upon information and belief as follows:

### JURISDICTION AND VENUE

    1.    This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely 29 U.S.C. §§ 201 and 207, the federal Fair Labor Standards Act ("FLSA") and supplemental jurisdiction over the remainder of Plaintiff's claims under New York State Labor Law, §§1 et seq., pursuant to 28 U.S.C. §1367.

    2.    Venue is proper under 28 U.S.C §1391(b) because some of the events or omissions giving rise to the claims herein occurred in the Southern District of New York and the Defendant does business in this District.

### IDENTITY OF THE PARTIES

    3.    At all relevant times mentioned herein, Plaintiff Wesley Berg ("Berg") was employed by Defendants Rondinone Studio LLC ("the Studio") and Ugo Rondinone in the County of New York, City and State of New York, until he was forced out of his workplace on June 11, 2019, due to the negative impact that the unsafe working conditions had on Berg's physical health.

4. At all relevant times mentioned herein, the Studio was and is a corporation duly organized and existing under the laws of the State of New York and does business in the County, City and State of New York.

5. The Studio is presently located in the residential neighborhood of Harlem, in Manhattan, where it is in the business of producing and selling the artwork of Defendant Ugo Rondinone.

6. Defendant Ugo Rondinone is a world-renown artist whose artwork has been the subject of major solo exhibitions at the Kunsthalle, in Vienna, Austria; Museo de Art Contemporaneo in Leon, Spain; the Louisiana Museum of Modern Art in Humlebaek, Denmark; the Contemporary Arts Center in Cincinnati, Ohio; the Sculpture Center in New York; was represented Switzerland in the Venice Biennale Art Show; and became a part of the permanent collections of prominent New York City art museums, such as the New Museum.

7. At all relevant times herein, Defendant Ugo Rondinone is the principal owner and operator of the Studio and oversaw and supervised Berg's work for the Studio (collectively, the Defendants are referred to herein as "Defendants" or "Rondinone").

**BACKGROUND RELEVANT TO ALL CAUSES OF ACTION**

8. Berg commenced his employment with Rondinone as Studio Assistant in February 2009, when the Studio was located in Ugo Rondinone's apartment in in downtown Manhattan.

9. In or about September 2009, Rondinone moved the studio into a building he owned located at 39 Great Jones Street and, at the end of 2012, Rondinone moved the studio into a defunct church located in Harlem New York that he purchased toward the end of 2011 with the stated intention of refurbishing it into a community cultural space.

10. At all relevant times, Berg was qualified for his position and fulfilled his duties in a satisfactory manner, which was demonstrated by the increase in his responsibilities assigned to him, the positive feedback he received and his promotion to Studio Supervisor in 2013.

11. In his role as Studio Supervisor, Berg's primary responsibility was to develop, execute and oversee in-house production of artwork, which included overseeing and producing prototypes that would ultimately be placed into production for development as final artwork.

12. Berg primarily reported to Defendant Ugo Rondinone but, on logistical matters, Berg reported to Office Manager Mattias Herold ("Herold").

13. From 2013 through February 2017, Berg generally worked in the Harlem studio ten (10) hours per day, Monday through Friday and also frequently worked on the weekends, as well.

14. From mid-September 2017 until the end of his employment in June 2019, Berg worked on a project basis for Defendants in various out-of-state locations.

15. Berg's total hours regularly exceeded 40 hours per week, so that he was entitled to overtime, yet Defendants failed to compensate Berg at an overtime rate for the overtime hours he worked.

16. Throughout his employment with Defendants, Berg complained to Ugo Rondinone and Herold about Defendants failure to pay him for the overtime hours that he worked, yet Defendants ignored Berg's complaints and continued to flagrantly violate federal and state wage and hour laws.

17. As a result of Defendants' violation of relevant wage and hour laws, Berg is due additional compensation for each and every hour that he worked in excess of forty (40) hours per week, as he was entitled to be paid at the overtime rate of one and one half the regular rate of pay, or at least $37.50 per hour, for every hour he worked over 40 hours per week.

18. Beginning in 2013, Berg was often required to use hazardous, toxic materials to create large scale art projects for Rondinone.

19. The use of the hazardous materials in Defendants' workplace presented health risks to the handlers of the materials, including Berg, since the work area was not properly ventilated, and the workers were not consistently supplied with proper protective garments.

20. As a result of Berg's enduring, chronic exposure to hazardous chemicals, Berg's health began to deteriorate, and he required medical treatment.

21. Further, Defendants' misuse of the hazardous materials presented a health risk to the public-at-large, as the workplace is located in a converted church that is not suitable for diverting and ventilating the airborne hazardous materials, and is located on a residential block and lot that is not properly zoned for use of manufacturing, and Defendants used a large electric fan to blow airborne fumes from inside the Studio onto busy street blocks of residential upper Fifth Avenue, in Harlem, where neighborhood residents would unknowingly be exposed to the airborne hazardous materials while walking in close proximity to the Studio.

22. Berg regularly complained to Defendants on behalf of himself and his colleagues about the improper and unlawful exposure to the hazardous materials and Berg also complained that the public was being exposed to the hazardous materials.

23. Specifically, Berg complained that the hazardous materials being used in the production of Defendants' artwork required proper training, proper equipment and to be completed in properly zoned areas, yet those protections were not provided.

24. Berg also complained about the erosion of his own respiratory health, which he reasonably believed was being caused by the regular exposure to the hazardous materials while working in the Studio.

25. Neither Rondinone, Ugo Rondinone nor Herold took any steps to address Berg's complaints and indeed, pushed for the work using the hazardous materials to continue.

26. Following numerous informal and formal meetings with Herold and Stuart Mitchell ("Mitchell"), the Technical Director, about concerns related to health and safety protocols, management, including Ugo Rondinone, began to punish Berg, which included reducing Berg's hours and the hours of his coworkers and issuing threats that they had "no rights" in the workplace.

27. One of the more egregious examples of Defendants' effort to diminish Berg's role was Defendants' delegation of Berg's job duties, and those of his coworkers who also complained about the dangerous working conditions at the Studio, to undocumented and untrained laborers who had been working on the renovation of the church, but who had no training in safety protocols, the handling of toxic materials and working with 150-piece life-sized resin models.

28. In February 2016, during a meeting with Herold and Mitchell, Berg complained that everyone was getting sick and that he and his colleagues could not continue working in the same dangerous manner and that if steps were not taken to remedy the unsafe workplace, he would have to make a complaint to an outside agency such as the Department of Labor.

29. Herold responded that if Berg were to make such an outside complaint, he would be placing Rondinone in a "vulnerable position" and Herold pressured Berg not to make such a complaint.

30. During an office meeting approximately one to two weeks later with Herold and Mitchell, Berg, together with his colleagues Bryce Zackery ("Zackery"), Alan Berg ("A. Berg") and Daniel Boccato ("Boccato"), requested that the Studio halt production of the art work until

production was moved to a more suitable location and, on a more immediate basis, that all of the Studio employees receive a medical assessment and benefits to cover the expense.

31. Herold and Mitchell rejected Berg's complaint.

32. In response, Berg, Zackery, A. Berg and Boccato advised Herold and Mitchell that they would be contacting the Occupational Safety and Health Administration ("OSHA") and the Department of Labor about this issue, to which Harold responded, "That would be really bad for Ugo and for you guys as well, if you like your jobs. I would suggest you don't do that."

33. Berg objected to Herold's threat and responded that he and his colleagues had "rights to a safe work environment."

34. Herold laughed in Berg's face and responded, "You have no rights."

35. Rather than address Berg's concerns, Rondinone retaliated against Berg by reducing his work schedule, citing "high production costs" as the reason for the reduction in work hours.

36. Given the close temporal proximity to Berg's complaint, the Studio's purported explanation for reducing Berg's schedule was a clear pretext to mask its retaliatory intent to chill Berg into keeping silent and discouraging him from moving forward with his complaints to OSHA, the Department of Buildings and the Department of Labor.

37. Despite Rondinone's threats and retaliatory response to Berg's complaint, Berg escalated his concerns to OSHA, who did an inspection of the Studio in or around August 2017.

38. During the inspection, in or around August 2017, Ugo Rondinone demanded that Berg and his colleagues assist him in deceiving the inspector by hiding the hazardous materials, which Berg refused to do.

39. Rather than address the safety concerns of Berg and his coworkers, Defendants marginalized them by retaining a number of undocumented and untrained workers to complete the large scale art projects that Berg had been working on.

40. These workers had no training in how to work with hazardous materials, which exacerbated the safety issues.

41. On occasion, these illegally retained workers would become verbally aggressive toward Berg when he would urge them to comply with safety standards and complained to Harold that "it's not that bad," "it's not unsafe," "we're macho" and "Wesley [Berg] thinks he's the police."

42. Herold continued to dismiss the complaints of Berg and his coworkers and both he and Mitchell caused, permitted and allowed the unchecked use of hazardous materials in the workplace, which completely undermined Berg in his role as Studio Supervisor.

43. Ugo Rondinone and Herold (speaking on behalf of Ugo Rondinone) frequently told Berg that if Berg and his coworkers did not like it, they could work somewhere else.

44. In 2018, Berg's doctors advised that he avoid any exposure to high levels of hazardous compounds.

45. Accordingly, during a meeting in January 2018, Berg advised Rondinone, Herold and Mitchell that he could no longer be physically present in the Studio where the Defendants allowed the hazardous materials to be used unchecked but could work off-site.

46. Rondinone harassed, ridiculed and dismissed Berg's health concerns in the presence of other managers and employees, demanding to know the full details of Berg's medical condition and diagnosis, which Berg reasonably felt uncomfortable providing, minimizing the severity of Berg's condition stating, "It's not that bad, you will be fine," when that was not the

case at all and questioning the medications he was taking and advice he was receiving from his physicians.

47. At the conclusion of the meeting, Rondinone stated that he knew Berg was responsible for the whistleblower complaints to OSHA and told Herold and Mitchell that the way to deal with OSHA would be to hide everything when OSHA is coming and then resume work when they leave, which was an outrageous violation of safety policies and procedures and a statement designed to denigrate Berg and his effort to comply with all safety policies and procedures to protect his health, the health of his coworkers and the public at large.

48. From March 2018 until June 2019, Berg continued to be employed by Defendants on a project basis, off-site.

49. Berg's workplace continued to cause him health problems until, on June 10, 2019, Berg's physician recommended that Berg stop working at the Studio due to his ongoing respiratory issues.

50. Defendants' deliberate requirement that Berg continue to misuse hazardous materials, and/or failure to take action to cease improper and unlawful use of hazardous materials, which Defendants were aware caused respiratory health complications for Berg, was an intentional act designed to force Berg out of his workplace and constitutes an unlawful and retaliatory constructive discharge.

51. Berg's last day of work was June 10, 2019.

52. Berg made a claim pursuant to the Workers' Compensation laws for the injuries he sustained to his respiratory health and, pursuant to Workers' Compensation Board Case Number G2104989, Berg was found to be entitled to Workers' Compensation benefits from Rondinone.

53. Here, Defendants' conduct has such a high degree of moral culpability, which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, that, in addition to the damages inflicted upon Berg and in addition to all measures of relief to which Berg may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in order to deter Defendants and others similarly situated from such conduct in the future, as is appropriate to effectuate the purposes of the FLSA and NYLL, in an amount to be determined at trial.

### AS FOR A FIRST CAUSE OF ACTION ON BEHALF OF BERG AND AGAINST BOTH DEFENDANTS FOR VIOLATION OF FLSA OVERTIME LAW, 29 U.S.C. §201, et seq.

54. Berg repeats, re-alleges and incorporates in full paragraphs 1 through 53 of this Complaint as though fully set forth at length herein.

55. Throughout Berg's employment, Defendants knowingly failed to pay him for work performed above forty (40) hours per work week in violation of the federal overtime provisions of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207.

56. Berg is not an exempt employee under the relevant provisions of the FLSA.

57. Berg is entitled to recover compensatory damages for the unpaid overtime hours that he worked, liquidated damages as provided by the FLSA, attorney's fees and costs, along with such other and further relief as this Court deems just and proper.

### AS FOR A SECOND CAUSE OF ACTION ON BEHALF OF BERG AND AGAINST BOTH DEFENDANTS FOR VIOLATION OF NYLL OVERTIME LAW, NYLL § 650, et seq.

58. Berg repeats, re-alleges and incorporates in full paragraphs 1 through 57 of this Complaint as though fully set forth at length herein.

59. Throughout his employment, Defendants knowingly failed to pay Berg for work performed above forty (40) hours per work week in violation of the overtime provisions of the New York State Labor Law ("NYLL"), Article 6 §198.

60. Berg is not an exempt employee under the relevant provisions of the NYLL.

61. Berg is entitled to recover compensatory damages for the unpaid overtime hours that he worked, liquidated damages as provided by NYLL Article 6 §198, attorney's fees and costs, pre- and post-judgment interest, along with such other and further relief as this Court deems just and proper.

### AS FOR A THIRD CAUSE OF ACTION ON BEHALF OF BERG AGAINST BOTH DEFENDANTS FOR FAILURE TO PROVIDE WTPA NOTICES IN VIOLATION OF NEW YORK LABOR LAW §195 AND §198

62. Berg repeats, re-alleges and incorporates in full paragraphs 1 through 53 of this Complaint, as though fully set forth at length herein.

63. As Berg continued to be employed by Defendants when the New York Wage Theft Protection Act ("WTPA") be became effective on or about April 9, 2011, the Defendants' failed to provide Berg with the appropriate WTPA wage notices consistent with New York Labor Law ("NYLL") §195 and §198 and, therefore were in violation of it.

64. As such, Defendants are liable to Plaintiff for statutory damages not to exceed $2,500 for failure to provide the initial wage notice pursuant to NYLL §195(1)(a) and §198(1-b) and statutory damages of $100 for each work week that the violation occurred or continued to occur through June 10, 2019, as well as reasonable attorneys' fees and costs.

## AS FOR A FOURTH CAUSE OF ACTION ON BEHALF OF BERG AGAINST BOTH DEFENDANTS FOR RETALIATION IN VIOLATION OF NYLL §740

65. Berg repeats, re-alleges and incorporates in full paragraphs 1 through 53 of this Complaint as though fully set forth at length herein.

66. Berg's complaints to Defendants about using hazardous materials in an unsafe manner, in dangerously close proximity to the unaware general public in residential Harlem, including his complaint that he would contact OSHA if the conduct was not corrected, which Defendants knew Berg was forced to do, constituted a protected activity pursuant to NYLL §740 of which Defendants were aware.

67. Defendants' subsequent reduction in Berg's work schedule and deliberate requirement that Berg continue to misuse hazardous materials, and/or failure to take action to cease improper and unlawful use of hazardous materials, which Defendants were aware caused respiratory health complications for Berg that forced Berg out of his workplace, constitutes an unlawful retaliatory constructive discharge.

68. The aforementioned acts of Defendants constitute unlawful retaliation against Berg in violation of New York Labor Law §740(2)(a) which provides, inter alia that:

> An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud; (b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such violation of a law, rule or regulation by such employer; or (c) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation.

69. As a result of Defendants' violations of Labor Law §740, Defendants are liable to Berg for all the relief provided for in Labor Law §740(5), including all "lost wages, benefits and remuneration," both prior and prospective, "fringe benefits," as well as "reasonable costs, disbursements and attorney's fees," as provided for under the law.

**AS AND FOR A FIFTH CAUSE OF ACTION, IN THE ALTERNATIVE, AGAINST UGO RONDINONE, INDIVIDUALLY, FOR AIDING AND ABETTING RETALIATION IN VIOLATION OF NYLL §740**

70. Berg repeats, re-alleges and incorporates in full paragraphs 1 through 53, 66-68 of this Complaint, as though fully set forth at length herein.

71. Should Ugo Rondinone not be found to be Berg's "employer" under the NYLL, Ugo Rondinone aided, abetted and compelled the retaliation against Berg, for his whistleblowing practices that present a danger to the health, welfare and safety of the public, so that Ugo Rondinone should be held personally liable.

72. The aforementioned acts of Ugo Rondinone constitute unlawful aiding and abetting unlawful retaliation against Berg in violation of NYLL §740(2)(a) which provides, inter alia that:

> An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud; (b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such violation of a law, rule or regulation by such employer; or (c) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation.

73. As a direct and proximate result of Ugo Rondinone's violations of NYLL §740, he should be held personally liable to Berg for all the relief provided for in NYLL §740(5), including

all "lost wages, benefits and remuneration," both prior and prospective, "fringe benefits," as well as "reasonable costs, disbursements and attorney's fees," as provided for under the law.

**WHEREFORE**, Plaintiff Wesley Berg demands judgment against Defendants Rondinone Studio LLC and Ugo Rondinone, or, in the alternative, Ugo Rondinone, individually, as follows:

a. An award of compensatory damages equal to all unpaid overtime wages pursuant to the FLSA and NYLL;

b. An award of compensatory and liquidated damages, including costs and reasonable attorney's fees, pursuant to the FLSA;

c. An award of compensatory, liquidated and/or punitive damages pursuant to the NYLL, including but not limited to NYLL §663(1) for willful violations of NYLL;

d. An award of attorney's fees and costs pursuant to NYLL §§198 and 663(4);

e. An award of compensatory damages, including all lost wages, both prior and prospective, as well as liquidated damages, costs and reasonable attorney's fees in violation of New York Labor Law §740;

f. An award of pre- and post-judgment interest as provided by law;

g. An award of the costs of this action; and

h. For such other and further relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By:_____
DAVIDA S. PERRY
BRIAN HELLER
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565
